**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTIAN MCCART,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　　Defendant. | **Case No. 1:14-cv-00214-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

I.   **INTRODUCTION**

　　　Plaintiff Christian McCart ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

II.   **BACKGROUND AND PRIOR PROCEEDINGS**[2]

　　　Plaintiff was 53 years old at the time of his hearing before the Social Security Administration. AR 30. He has completed his GED and has some vocational training in welding,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 8, 9.)
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

although he did not complete his training. AR 41. He was also in the United States Marine Corps from 1978 to 1980, although he received a less than honorable discharge. AR 41, 471. Plaintiff most recently worked as a caregiver providing in-home care and/or nursing home care in 2009.[3] AR 43, 191. His employment was terminated in 2009 after a number of conflicts with co-workers. AR 191, 215. Plaintiff has no dependent children and is divorced. AR 31. He lives alone in an apartment. AR 31.

Plaintiff's alleged physical conditions include prostate cancer, irritable bowel syndrome, diverticulosis, and major depressive disorder. AR 191. He takes (or has taken) dicyclomine, famotidine, fluoxetine, hydrocodone, hydroxyzine, and terazosin to manage his symptoms. AR 194.

On March 1, 2011, Plaintiff filed applications for disability insurance benefits and SSI under Titles II and XVI. AR 140-148, 149-156. The applications were denied initially on June 13, 2011 and on reconsideration on October 25, 2011. AR 69-71, 72-75, 79-84. Plaintiff filed a request for a hearing on November 10, 2011. AR 85-86. The hearing was conducted before Administrative Law Judge Robert E. Lowenstein (the "ALJ") on September 19, 2012. AR 9. On October 3, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 9-20. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied his appeal, rendering the order the final decision of the Commissioner. AR 1-4.

Plaintiff now challenges the ALJ's decision, arguing that the ALJ incorrectly rejected the opinion of treating physician Mayurkumar Amin, M.D. Moreover, Plaintiff argues, the ALJ had a duty to develop the record with respect to Dr. Amin's opinion. As a result, the case should be remanded with instructions to contact Dr. Amin and solicit clarification on his opinion. (Opening Brief 10:10-20, ECF No. 20.)

Defendant responds that: (1) Dr. Amin's findings were correctly discounted because they were based on non-credible self reports by Plaintiff; (2) Dr. Amin's findings were unsupported by the record; and (3) the ALJ had no duty to develop the record because Dr. Amin's opinion was

---

[3] Plaintiff provides different dates for the end of his employment at various points in the record. AR 43, 172, 191.

not ambiguous—it was simply unsupported by the record. (Opposition Brief 11-21, ECF No. 21.)

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 9-20. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2010, the date specified in his application. AR 11. Further, the ALJ identified major depressive disorder, chronic abdominal pain from irritable bowel syndrome, and diverticulosis as severe impairments.[6] AR 11. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 12.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations:  he is able to perform work where interpersonal contact is incidental to work performed, such as assembly work, and where the complexity of tasks is learned and performed by rote, there are few variables, little judgment, and the supervision required is simple, direct, and concrete." AR 14. Plaintiff was unable to perform his past relevant work. AR 18. However, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 19.

**IV.   STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one

---

[6] Although Plaintiff alleged prostate cancer as a disability, the ALJ's review of the record uncovered no evidence that Plaintiff had ever been diagnosed with prostate cancer. AR 12.

of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V.   DISCUSSION

### A.  The Relevant Medical Evidence

Plaintiff contends that the ALJ failed to provide legitimate reasons for rejecting the opinion of treating physician Mayurkumar Amin, M.D. To reach this conclusion, the ALJ considered a number of different medical opinions. Because Dr. Amin only treated Plaintiff's psychiatric symptoms, the Court's review of the medical evidence will be limited to the records dealing with his mental impairments. Plaintiff does not challenge the ALJ's findings with respect to his physical impairments or credibility.

#### *i.  Burke Bonilla, M.D.*

Dr. Bonilla, a treating psychiatrist, first saw Plaintiff on November 3, 2010. AR 327. Plaintiff was referred to Dr. Bonilla by his primary care physician and "was surprised he was asked to see a psychiatrist as all he was wanting was [sic] refill of Prozac." AR 327. Plaintiff reported that he had been taking Prozac since 2005 and had been doing well on it, although he stopped in 2007. AR 327. He reported that he had experienced symptoms of depression "all of my life." AR 327. Dr. Bonilla prescribed Prozac and set a follow up appointment with Plaintiff. AR 330.

Plaintiff saw Dr. Bonilla again on December 1, 2010. AR 333. Plaintiff reported feelings of anxiety based on problems with his family that stemmed from childhood and told Dr. Bonilla that he had recently lost his job.[7] AR 333. Plaintiff was referred to therapy.[8] AR 333. The next time Plaintiff reported to Dr. Bonilla, on March 25, 2011, Plaintiff told Dr. Bonilla that the

---

[7] It is not clear what job Plaintiff was referring to; according to his other statements in the record, his last date of employment was in 2008 or 2009.

[8] Plaintiff attended multiple group sessions of therapy lead by Kathleen Friedland, Ph.D. The ALJ discusses the contents of these sessions to provide context for Plaintiff's daily activities, but does not determine how much weight to give Dr. Friedland. Presumably, the ALJ chose not to do so because the therapy sessions were group oriented and Dr. Friedland's notes thus do not include the kinds of recommendations regarding Plaintiff's ability to function that might be expected of a treating physician. Plaintiff does not challenge the ALJ's treatment of Dr. Friedland. Her notes would not be helpful for Plaintiff, in any case. Among other things, Dr. Friedland noted that Plaintiff mentioned that he watches television, goes to movies, goes out to eat, plays computer games, and once chopped down a tree and placed the resulting firewood in a designated location. AR 432, 459, 465, 471, 477. These statements were largely contrary to Plaintiff's depiction of his daily activities and ability to function at the hearing in front of the ALJ. AR 32, 39, 45.

therapy had been helpful and that he had been taking Wellbutrin, which had decreased his symptoms. AR 343. Dr. Bonilla described Plaintiff's demeanor as "pleasant and cooperative," his thought process and content as "logical and normal," and his impulse control, insight, and judgment as "good." AR 344.

In a follow up appointment on April 19, 2011, Dr. Bonilla reported that Plaintiff was "satisfied with the results of the medications and doesn't want to make any changes for now." AR 349. Dr. Bonilla also noted that Plaintiff laughed and joked with him during the appointment and that he "would like to try and wean [Plaintiff] off Prozac when he is stable and things in his life are more stable." AR 350. Later in 2011, Plaintiff asked Dr. Bonilla to fill out several supplemental certification forms from the California Employment Development Department which stated that Plaintiff was unable to perform his "regular or customary work." AR 531-540. Each form noted that Plaintiff would be able to return to work within a month or two after the dates of the respective forms. AR 531-540. In his last visit with Dr. Bonilla on November 30, 2011, Plaintiff reported that he was "doing better," had reduced symptoms of depression, "and an overall improvement." AR 428.

The ALJ accorded Dr. Bonilla little weight, saying that his statements that Plaintiff was disabled only accounted for brief periods of time and were thus of limited value. AR 18.

### ii. *Abesie Kelly, Ph.D.*

Dr. Kelly, a reviewing psychologist, examined Plaintiff's records on June 10, 2011. AR 358-361. Dr. Kelly described moderate limitations in Plaintiff's ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to sustain an ordinary routine without special supervision; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to respond appropriately to changes in the work setting; and ability to set realistic goals or make plans independently of others. AR 360. Dr. Kelly determined that none of Plaintiff's other abilities were significantly limited. AR 360. Dr. Kelly also explained that Plaintiff's mental status was within

normal limits and that "[t]here is no evidence of marked impairment in functioning." AR 361. Dr. Kelly concluded that "[t]hough the Claimant may have some problems, symptoms do not preclude him from engaging in [simple, routine, repetitive tasks] in a consistent, predictable fashion." AR 361. The ALJ gave Dr. Kelly's opinion significant weight. AR 18.

### iii.  Mayurkumar Amin, D.O.

Dr. Amin is Plaintiff's most recent treating psychiatrist and has seen Plaintiff on at least three occasions. AR 515. On December 16, 2011, Dr. Amin filled out a form for the Fresno County Department of Social Services on which he checked a box indicating that Plaintiff was not able to work. AR 542. To explain this conclusion, Dr. Amin wrote: "Recurrent depression and health problems from chemicals he was exposed to in service. In chronic pain." AR 542. The form indicated that Plaintiff's inability to work was permanent. AR 543. On January 25, 2012, Dr. Amin saw Plaintiff and noted that he was cooperative, had normal speech, orientation, and cognition, and had organized thought processes. AR 520. He also noted that Plaintiff reported he had "been feeling about the same" and that he had "attempted to purchase [a] weapon to end his life." AR 520. Dr. Amin recommended Plaintiff continue his current medications and supported his decision to attend group therapy. AR 521. Dr. Amin again saw Plaintiff on February 23, 2012 and reported that he was well groomed, cooperative, and had normal cognition, speech, and orientation. AR 518. He also showed organized thought processes and normal insight and judgment. AR 518. Dr. Amin's notes were largely unchanged from Plaintiff's January visit. AR 519. The ALJ gave Dr. Amin's opinion little weight. AR 18.

### B.  Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical

professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir.2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

**C. The ALJ Appropriately Considered Dr. Amin's Findings**

The ALJ rejected Dr. Amin's conclusion that Plaintiff was precluded from performing any regular work activity. AR 18. Because Dr. Amin's opinion is more restrictive than the opinions of

Drs. Bonilla and Kelly, the ALJ need only have provided specific and legitimate reasons supported by substantial evidence to reject Dr. Amin's opinion.

The ALJ discusses Dr. Amin's findings in one paragraph:

> Mayurkumar Amin, M.D., the claimant's current psychiatrist, noted in December 2011 that, because of recurrent depression and health problems related to chemicals he was exposed to in the service, the claimant cannot work. Dr. Amin has examined the claimant several times, but this opinion is not consistent with the evidence of record. Dr. Amin fails to describe what the claimant remains able to do despite his impairments. Further, he has no personal knowledge of the claimant's chemical exposure and has made no findings regarding that exposure, suggesting that his opinion is based largely on the claimant's subjective statements rather than his own observations of the claimant's abilities. Finally, whether an individual is capable of working is an administrative conclusion that is reserved to the Commissioner. Dr. Amin's opinion is vague and addresses issues reserved to the Commissioner; therefore, the undersigned gives it little weight.

AR 18 (internal citations omitted).

The ALJ thus rejected Dr. Amin's findings because: (1) the findings were inconsistent with the evidence in the record; and (2) the findings were based on apparent self-reports by the Plaintiff. It is unclear whether (1) refers to the inconsistency of Dr. Amin's findings with the rest of the record as a whole or the inconsistency of the findings with Dr. Amin's own notes. Defendant argues, however, that Dr. Amin's conclusions are inconsistent with both. (Opposition Brief 7:12-21; 7:22-8:8, ECF No. 21.)

Inconsistencies with the overall record or with a physician's own notes are both specific and legitimate reasons to reject a physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician opinion where physician's "other recorded observations and opinions" contradicted his ultimate conclusions); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's finding of "marked limitations" legitimately rejected where "no substantial evidence existed demonstrating [plaintiff's] mental impairments prevented him from working").

Both reasons also appear to be supported by substantial evidence. Dr. Amin's ultimate conclusion that Plaintiff is precluded from working is supported by only six pages of notes taken from three encounters with Plaintiff. AR 518-519, 520-521, 542-543. Two of those three encounters lasted less than 30 minutes. AR 518, 520. And despite saying that Plaintiff was

completely disabled on December 13, 2011, Dr. Amin later described Plaintiff's orientation, motor activity, cognition, speech, thought processes, affective range, intelligence, insight, and judgment as normal. AR 518, 520. Dr. Amin did note that Plaintiff had attempted to purchase a weapon to end his own life. AR 518, 520. But Dr. Amin's treatment notes do not reveal any sense of alarm at this event; he continued Plaintiff's medication at the then-existing levels and recommended he get involved in group therapy sessions. AR 519. And Plaintiff later denied "any suicide attempts" to Cecilia Salazar, a nurse practitioner who worked with Dr. Amin.[9] AR 514. Based on these facts, the ALJ could reasonably have found that Dr. Amin's notes did not support his conclusions.

As Defendant points out, Dr. Amin's conclusions are inconsistent with the other evidence in the record, as well. Records from a number of other sources, including Drs. Bonilla, Kelly, and Friedland, discuss Plaintiff's essentially normal mental status, despite his depression. AR 327, 334, 344, 350, 361, 382, 459, 465, 471, 477. Dr. Amin made similar observations, as discussed above.

Finally, the ALJ found that Dr. Amin's opinion was based primarily on self-reports because he did not explain why he would ascribe Plaintiff's health problems to "chemicals he was exposed to" while serving in the military. AR 18. Such a rationale can form a specific and legitimate reason to reject a medical opinion, particularly given the ALJ's finding that Plaintiff lacked credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible"). Whether there is substantial evidence to support the ALJ's reasoning is a closer question. The ALJ suggests that Dr. Amin "has no personal knowledge of the claimant's chemical exposure and has made no findings regarding that exposure, suggesting that his opinion is based largely on the claimant's subjective statements

---

[9] Other evidence in the record makes it unclear whether Plaintiff's allegations of a suicide attempt are credible. In December 2011, Plaintiff told his assigned social worker, Joan Hennes, that his attempt to buy a gun occurred in May 2011. AR 523. He also told Hennes that he told his psychiatrist at the time, Dr. Bonilla, about the attempt. AR 523. Dr. Bonilla's notes from this period of time, however, make no mention of this event. In fact, Dr. Bonilla's notes from May 2011 indicate Plaintiff told him that he was not feeling suicidal and Dr. Bonilla determined that there was no imminent risk of suicide. AR 382.

rather than his own observations of the claimant's abilities." AR 18. And, in fact, there are instances in the record in which Plaintiff tells others about potential exposure to contaminants related to his military service, although no such instances are recorded in Dr. Amin's notes. AR 381 ("More recently he received a notice from the government saying while serving he was exposed to water contaminated by a chemical now known to cause cancer and birth defects"), 471 ("he feels they are delaying because they know that some people were exposed to what he was exposed to and don't want to admit it"). Given the facts that: (1) Dr. Amin does not explain how he learned of the potential chemical contamination; and (2) all the other instances referencing Plaintiff's potential chemical contamination in the record are self-reports by Plaintiff, it was reasonable for the ALJ to conclude that Dr. Amin learned of the chemical contamination through a self-report by Plaintiff.[10]

### D. The Duty to Develop the Record

Plaintiff argues that the ALJ had a duty to develop the record with respect to Dr. Amin's opinion because: (1) Dr. Amin rendered an opinion on an issue reserved to the Commissioner (*e.g.*, whether Plaintiff could work); and (2) the basis for Dr. Amin's opinion was unclear because the ALJ held that Dr. Amin had no personal knowledge of Plaintiff's potential chemical exposure. (Opening Brief 9:20-26, ECF No. 20.)

An ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Id*. Once the duty is triggered, the ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Such an inquiry need not be all-encompassing, however. An ALJ "does not have to

---

[10] Dr. Amin's conclusion that Plaintiff is precluded from working is notably brief and conclusory, as well. It would be within the ALJ's discretion to give it little weight on this basis alone. *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"), *quoting Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("The standard is one of reasonable good judgment"). Indeed, an ALJ is only required to conduct further inquiries with a treating or consulting physician "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010). The duty to develop the record is typically triggered where, for example, a claimant's medical records are incomplete or there is an "issue sought to be developed which, on its face, must be substantial." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

The ALJ did not find that the record with respect to Dr. Amin was incomplete or ambiguous. The issue with Dr. Amin's opinion was not that it was ambiguous—it was that the opinion was contradicted by the evidence in the record. The ALJ was not raising Dr. Amin's lack of personal knowledge to show that Dr. Amin's opinion was ambiguously based. Rather, the lack of personal knowledge was discussed to demonstrate that Dr. Amin relied on Plaintiff's subjective self-reports. AR 18 ("he has no personal knowledge of the claimant's chemical exposure and has made no findings regarding that exposure, ***suggesting that his opinion is based largely on the claimant's subjective statements rather than his own observations of the claimant's abilities***") (emphasis added). Put simply, the ALJ never determined that the basis of Dr. Amin's opinion was unclear—he determined that it was incorrect and unsupported.

And, in any case, the ALJ had adequate grounds to reject Dr. Amin's opinion which were unrelated to the basis of his knowledge of Plaintiff's potential chemical exposure. Even if the basis of his opinion were ambiguous and the ALJ was required to inquire further, the ALJ would still have been within his discretion to give little weight to Dr. Amin because, as discussed above, Dr. Amin's conclusions are inconsistent with the record and inconsistent with his own personal notes. The basis of Dr. Amin's opinion about Plaintiff's potential chemical contamination is thus not substantial on its face and cannot trigger the duty to develop. Moreover, any error committed by the ALJ here would have been harmless and need not justify remand. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'").

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not significantly limited in his ability to perform basic work activities is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, Commissioner of Social Security and against Plaintiff, Christian McCart.

IT IS SO ORDERED.

Dated: __August 4, 2015__                    __/s/ Gary S. Austin__
                                                               UNITED STATES MAGISTRATE JUDGE